UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,

v.                                                C.R. No. 08-02T

FELIPE ARIAS
a/k/a Angel Deleon

MEMORANDUM AND ORDER

Felipe Arias has been charged with possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. 922(g)(1). Arias has moved to suppress the firearm which was seized, during the course of a traffic stop, from a motor vehicle in which he was riding as a passenger.

The issue presented is whether police had sufficient cause to stop and search the vehicle. Because this Court finds that they did not have sufficient cause to stop the vehicle, the motion to suppress is granted.

Facts

After conducting an evidentiary hearing, this Court finds the relevant facts to be as follows.

Shortly before 9:00 p.m. on November 27, 2007, Patrolman Charles T. Vieira of the Providence Police Department was driving his patrol car in a westerly direction on Reynolds Avenue in what

1

he referred to as a "high crime" area in the City of Providence. Officer Vieira observed a white Subaru wagon traveling in the opposite direction and coming toward him. After turning around in a driveway, the Subaru, still some distance ahead of Officer Vieira's patrol car, reversed direction and, also, began heading west on Reynolds.

Officer Vieira followed the Subaru as it turned left onto Ocean Street and he observed that it was occupied by three males. He checked the Subaru's license plate through his onboard computer and learned that it was registered to a Douglas Sosa-Nelson and that it had not been reported as stolen. Officer Vieira, then, stopped the Subaru and shined his patrol car's spotlight and rooftop "take-down" lights on it.

As Officer Vieira left his patrol car he saw Arias, the front seat passenger, lean forward. When Officer Vieira shouted to the occupants to show their hands, the driver and rear seat passenger did so but Arias did not. As Officer Vieira approached the Subaru, he called for backup and shined his flashlight into the car which enabled him to see Arias shoving what appeared to be a chrome object into the door panel and he heard a banging noise emanating from the door which sounded "like metal on metal."

When two backup officers arrived, the occupants, all young Hispanic men, were removed from the Subaru and "patted down." As Arias stepped out of the Subaru, two batting gloves fell from his

lap onto the ground. Officer Vieira then looked into a stereo speaker opening in the front passenger door where he saw a chrome pistol that was discovered to have an erased serial number and to contain a magazine with several live rounds.

Arias has moved to suppress the firearm on the grounds that Officer Vieira lacked probable cause to stop or search the Subaru.

## The Applicable Law

A traffic stop is a seizure within the meaning of the Fourth Amendment and, therefore, it must be reasonable under the circumstances in order to pass constitutional muster. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed. 2d 89 (1996); United States v. Chhien, 266 F.3d 1, 5 (1st Cir. 2001)(A traffic stop "constitutes a seizure within the purview of the Fourth Amendment . . . [and] must be reasonable under the circumstances"). Moreover, as in the case of any warrantless search or seizure, the burden is on the government to establish that the stop was reasonable. United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001).

A brief investigatory traffic stop does not violate the Fourth Amendment if police have a reasonable, articulable suspicion, based on objective facts, that the occupants of the vehicle are engaged in criminal activity, or if they have probable cause to believe that a traffic violation has been committed. United States v. Chhien, 266 F.3d at 6 (A traffic stop "must be supported by a

3

reasonable and articulable suspicion of criminal activity")(citing Berkemer v. McCarthy, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L. Ed.2d 317 (1984)); United States v. Harris, 526 F.3d 1334, 1337-38 (11th Cir. 2008)(A traffic stop is constitutional "if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with Terry, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889"); United States v. Stachowiak, 521 F.3d 852, 855 (8th Cir. 2008)("[O]fficer must have 'at least articulable and reasonable suspicion' of illegal activity to stop a motor vehicle"); United States v. Wright, 512 F.3d 466, 471 (8th Cir. 2008)(A traffic stop is reasonable "'where the police have probable cause to believe that a traffic violation has occurred'")(citing to Whren, 517 U.S. at 810, 116 S.Ct. 1769).

When officers have probable cause to believe that a traffic violation has occurred, a vehicle stop is not rendered unconstitutional merely because they were mistaken as to the facts. United States v. Jenkins, 452 F.3d 207, 212 (2d Cir. 2006). See, United States v. McDonald, 453 F.3d 958, 961-62 (7th Cir. 2006) (While a reasonable mistake of fact may justify a traffic stop, a mistake of law cannot). Nor is a vehicle stop rendered unconstitutional simply because the violation was a pretext for seeking to obtain evidence of suspected criminal activity. United States v. Robinson, 414 U.S. 218, 221 n.1, 94 S.Ct. 467,470 n.1, 38

4

L.Ed.2d 427 (1973)(A traffic stop is not rendered invalid by the fact that it was "a mere pretext for a narcotics search"); United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996)("[T]he stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot"). The relevant inquiry is whether the stop was objectively reasonable and not what the officer's subjective intent was. Whren v. United States, 517 at 813, 116 S.Ct. at 1774 (confirming that "'[s]ubjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional'")(internal citation omitted).

The determination as to whether a traffic stop was reasonable must be based on the totality of the circumstances as they existed at the time of the stop. United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); United States v. Walker, 924 F.2d 1, 3-4 (1st Cir. 1991). A stop that is unlawful at its inception is not made lawful by the fact that it leads to the discovery of evidence of criminal activity. United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994)(holding that a search must be justified by reasonable suspicion at the inception of the intrusion). While presence in a "high crime area" is a relevant consideration, it is not sufficient, by itself, to support the stop. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed.2d 570 (2000).

5

## The Arias Search

In this case, Officer Vieira mentioned, in passing, that the Subaru was traveling in a "high crime area" but the government offered no other evidence that, prior to the stop, he had reason to believe that the occupants were engaged in any criminal activity. Rather, the government sought to justify the stop on the ground that a traffic violation had been committed. Therefore, the threshold question is whether the government has presented credible evidence that Officer Vieira had probable cause, based on objective facts, to believe that a traffic violation had been committed.

Officer Vieira testified that, when the Subaru turned around on Reynolds Avenue, he noticed that the left rear tail light, including the signal light, was "smashed out" and could not have been operable. That testimony was consistent with the incident report that Officer Vieira filed in which he stated that the Subaru was "operating with a broken rear tail light." It also is consistent with the fact that, at the scene, the driver of the Subaru was issued a citation for driving with a broken tail light but it is at odds with the testimony of several other witnesses.

In any event, Officer Vieira further testified that he stopped the Subaru because the driver failed to signal before making a left turn onto Ocean Street, something that was not mentioned in his report or in the citation issued to the driver. On cross-examination, Officer Vieira acknowledged that, a few days before

the suppression hearing, he learned from an Assistant United States Attorney that operating a vehicle with a broken tail light, by itself, is not a violation of Rhode Island's traffic laws.

Arias, then, presented convincing evidence that the Subaru's left rear tail light was not damaged in any way. Betty Palmisciano, the office manager at Dean Auto Collision Center ("Dean Auto"), where the Subaru was taken from the scene, testified that, when the vehicle arrived, there was no damage to the left rear tail light and no work was done on it during the approximately two months that it remained on Dean Auto's lot. Kevin Horning, a Dean Auto employee who purchased the Subaru after the owner relinquished any claim to it, corroborated Palmisciano's testimony and added that the left rear signal light was fully functional. Daniel Fortier, a private investigator hired by defense counsel, who examined the vehicle in March 2008, also testified that he observed no damage to the left rear tail light and he produced photographs confirming his observations.

Since driving with a broken tail light is not a traffic violation, the fact that Officer Vieira was, at least, mistaken in stating that the Subaru's tail light was smashed is not material as to whether he had sufficient legal justification for stopping the Subaru. However, it is relevant on the issue of whether Officer Vieira had probable cause to believe that the Subaru had failed to give a turn signal.

There are several reasons why this Court cannot accept the contention that the Subaru was stopped because its driver failed to give a turn signal. First, Officer Vieira appeared to base his testimony, at least in part, not on what he actually observed but, rather, on the erroneous premise that the Subaru's tail light was smashed and the assumption that, therefore, it could not have signaled. Moreover, the reliability of his testimony that the Subaru failed to signal is undermined by the fact that he was plainly incorrect in stating that the vehicle's tail light was smashed. In addition, the failure to signal was not mentioned in Officer Vieira's report and his testimony about the alleged failure came after he had been informed that driving with a smashed tail light was not a traffic violation. Finally, the driver of the Subaru was cited for driving with a broken tail light, and not for failing to signal.

It seems clear that Arias and his companions were engaged in or were contemplating criminal activity that was likely to result in death or serious injury and that, by stopping the Subaru, Officer Vieira prevented that from happening. There is no other plausible explanation of the fact that Arias possessed a loaded pistol with an obliterated serial number and, apparently, was wearing gloves so that he would leave no fingerprints on the weapon. Accordingly, it is difficult to accept the notion that evidence important to the case against Arias should be suppressed.

However, the issue raised by Arias's motion to suppress is whether the firearm was seized pursuant to a lawful search. A warrantless search made without probable cause does not pass muster under the Fourth Amendment on the ground that, in fact, it turned up evidence of criminal activity. Bailey v. United States, 389 F.2d 305, 308 (C.A.D.C. 1967) (Discovery of evidence does not validate a search that was not legitimate at its beginning). Reasonable grounds for believing that criminal activity is afoot must exist before the search is conducted. United States v. Sowers, 136 F.3d 24, 27 (1st Cir. 1998), cert. denied, 525 U.S. 841, 119 S. Ct. 105, 142 L.Ed.2d 84 (1998)(Court must determine "whether the officer's actions were justified at the inception")(Emphasis added); Bailey v. United States, 389 F.2d at 308 (holding that "there must be probable cause before the search begins, for 'a search is not to be made legal by what it turns up.'")(quoting United States v. DiRe, 332 U.S. 581, 595, 68 S. Ct. 222, 229, 92 L.Ed. 210 (1948)).

In this case, it is possible that there were facts or circumstances giving rise to a reasonable suspicion that the occupants of the Subaru were engaged in criminal activity but, no such facts or circumstances were related. If such facts or circumstances existed, the failure to relate them might have been attributable to concerns that, while they signaled to an experienced police officer who "knew the territory" that criminal

activity was afoot, they were difficult to articulate and/or their significance might not have been fully understood by a court considering them in the sterile atmosphere of the courtroom. The failure also might be attributable to concerns that the reasons might be misconstrued as some form of bias or prejudice.[1] However, while such concerns might cause an officer to proffer a reason that is easier to articulate or less likely to be misconstrued, it does not justify fabricating such a reason. In short, the Fourth Amendment permits an officer to seize upon a traffic violation as a pretext for stopping a vehicle in order to prevent, or discover evidence of what an officer legitimately suspects is, criminal activity but it does not permit an officer to invent a reason for stopping a vehicle.

In this case, there is no need to consider whether facts learned after the Subaru had been stopped provided probable cause for the search that unearthed the firearm because the government has failed to meet its burden of showing that the Subaru was lawfully stopped, in the first place.

---

[1] In this case, the occupants of the Subaru were young Hispanic males.

## Conclusion

For all of the foregoing reasons, the defendant's motion to suppress is granted.

IT IS SO ORDERED,

*Ernest C. Torres*
_____
Ernest C. Torres
Sr. U.S. District Judge
Date:    11/21    , 2008